Rosa, Appellant, *v.* Paint Creek Collieries.

Argued November 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

David L. Ullman, for appellant.

Francis A. Dunn, for appellee.

OPINION BY GUNTHER, J., January 17, 1952:

In this workmen's compensation case the claimant appeals from an order of the court below affirming the action of the Board in terminating compensation on the ground that disability had ceased.

On June 22, 1946, claimant, 54 years of age, was struck by a mine locomotive and as a result suffered compound fractures of both legs. Claimant was paid compensation for total disability until January 10, 1947, at which time the employer filed a petition to modify alleging that the claimant was then able to return to some kind of work without more than a 25% partial disability. After hearing, the referee found that the claimant's right leg had healed properly, but that "the claimant still has residual disability in the left leg due to the condition of the fibula". A bone graft operation was recommended to improve the union of the fibula; the operation was tendered by the employer and accepted by the claimant. The referee found as a fact that claimant, as of January 11, 1947, had a partial disability of 25%. On April 9, 1947, the day after the hearing, claimant entered the hospital, a supplemental agreement for total disability was executed and compensation paid under this agreement until August 20, 1947. The employer stopped payments on that date and shortly thereafter filed its petition seeking termination of compensation on the ground that the claimant on

or before August 20, 1947, had fully recovered and was able to return to work without any disability. Claimant filed an answer alleging that he still suffered partial disability. The matter was heard by a referee on October 30, 1947, at which time Dr. Edward Pardoe, the operating surgeon called by defendant, testified that the bone graft operation was successful and showed that the bones had united properly; that the claimant had full use of all joints of the injured limb; that claimant was able to resume labor with some handicap, which handicap was brought about by a generalized softening of his tissues due to the fact that he had done no work for over a year. Dr. Pardoe expressed the opinion that no matter when the claimant would return to work he would have a period of rehabilitation for the hardening of his muscles; that this might take from four to six weeks. Claimant called Dr. Zobel who had made an examination of the claimant on September 27, 1947. Dr. Zobel testified that there was normal function of the left ankle and that he believed claimant was ready for light work which would be indicated as a measure of therapy in providing continued improvement in the use of his left lower leg. Claimant testified that he had not returned to work since he was injured; that he had not asked for light work in the employer's colliery because that mine was "finished"; that before the second operation he had sought employment at the Trimble Mine but was refused employment because they did not want to take "rehabilitates". He testified that he had not tried to obtain employment elsewhere but had attempted to do odd jobs around the house but could not stand for more than a couple of hours because of his injured left leg.

The foregoing is a summary of the testimony. There is little dispute of fact. On this testimony the referee found as a fact as follows: "Fourth: From the evidence your Referee finds that as of August 20, 1947 the claim-

ant was no longer totally disabled; that he had recovered insofar as the fractures were concerned and from the results of his operation; that he *still suffered with a partial disability* which reflected in a loss of earning power of twenty-five per cent, but only by reason of the fact that light work was indicated for a period of time to effect claimant's rehabilitation, and your Referee finds that this period of rehabilitation would not have exceeded a period of two months. . . .". (Italics supplied) The referee then concluded as a matter of law that the employer was entitled to a modification from total to a 25% partial disability as of August 20, 1947, and to termination of the agreement for any and all disability on October 20, 1947. On appeal to the Workmen's Compensation Board, the board affirmed the findings and conclusions of the referee and stated that "The record establishes that claimant suffered a partial disability at the time of hearing on October 30, 1947. However, the medical testimony is in agreement that this disability was the result of claimant's idleness since the accident and subsequent operation and that claimant's disability would have ceased if he had returned to work in August, 1947, when he was so advised . . .". Claimant then appealed to the court of common pleas and that court dismissed the appeal concluding that there was substantial evidence to support the findings of the board.

The difficulty with the finding of the board is that on October 30, 1947, the date of the hearing on the petition to terminate, they found that the claimant still suffered with a partial disability. The board stated that "The record establishes that claimant suffered a *partial disability at the time of hearing on October 30, 1947*". (Italics supplied) In the conclusions of law, compensation was terminated on October 20, 1947, or ten days prior to the hearing. It was clear, therefore, that on this state of the evidence termination was not

warranted, for instead of finding that disability of the claimant had ceased the compensation authorities found that the claimant was still partially disabled ten days after they had ordered compensation terminated. The employer contends, however, that if the claimant had returned to light work at the time he was advised to do so by the employer's doctor claimant's disability would have terminated on or about the date selected by the compensation authorities, namely, October 20, 1947. The record does not disclose whether there were other places to which a partially crippled miner could have gone and obtained light work as would have had therapeutic value in enabling him to rehabilitate himself. If there were such places, it was the defendant's burden to prove that fact; they made no attempt to meet this burden. It would seem that some effort should have been made by the employer to see to it that the claimant received therapeutic work or some type of physiotherapy in order that his injured limb could have been strengthened and restored. The record is completely barren of any such evidence. Certainly on the findings recited, *supra*, the employer was not entitled to termination. A defendant in seeking to terminate an existing agreement has the burden of proving that claimant's disability from the accident had ended. *Bartman v. Jones & Laughlin Steel Corp.*, 163 Pa. Superior Ct. 31, 35, 60 A. 2d 565.

Where, as here, findings of fact of the compensation authorities are inconsistent with its conclusions of law, it is our duty to refer the matter back to the board for further hearing, consideration and determination to make consistent findings and appropriate conclusions of law and to enter an order in conformity with such findings and conclusions.

The order is reversed and the record remitted to the board for further hearing, consideration and determination in the light of this opinion.